UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BENEDICT W. TALBOT, JR.,

          Plaintiff,

v.                                                             Case No. 5:08-cv-206-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On August 10, 2004, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of April 1, 1999. (R. 14.) Plaintiff's application was denied initially and upon reconsideration. (R. 47-48, 51-52.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 40.) ALJ Apolo Garcia conducted Plaintiff's administrative hearing on August 3, 2006. (R. 825-54.). At the hearing, Plaintiff amended his onset date to October 11, 2001. (R. 827.) The ALJ issued a decision unfavorable to Plaintiff on October 13, 2006. (R. 14-22.) Plaintiff

requested review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals and submitted additional records (R. 9, 438-824); his request was denied. (R. 3-6.). Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was fifty-nine (59) years old at the time of the hearing. (R. 828.) He graduated from high school (R. 828) and has previous work experience as a ground support equipment mechanic for Delta Airlines. (R. 87, 829.) Plaintiff sustained a work-related injury on April 1, 1991. Plaintiff alleges that he ultimately took early retirement in 1999 because he was becoming unreliable and his "productivity was falling off" due to pain and medications. (R. 830-31.) Plaintiff alleges that he was disabled from all work beginning October 11, 2001 (R. 827) due to pain in the head, neck, shoulders, and arms, with inability to lift his arms out. (R. 78.) In April 2002, Plaintiff unsuccessfully

---

[18] <u>Walker</u> at 1003.

[19] <u>Wolfe</u> at 1077-78.

[20] See <u>id</u>.

[21] See <u>Doughty</u> at 1278 n.2.

attempted to return to work as a mechanic for a bottling water company, but he was only able to work for approximately three weeks due to the pain. (R. 829.)

In August and October 1999, Plaintiff had steroid cervical epidural blocks. (R. 139-44.) On November 15, 1999, he returned for follow-up and reported that his pain was much better from the blocks but that he was having some frontal headache, right-sided frontal pain and a sensation of a dull ache. (R. 138.)

On March 16, 2001, Plaintiff sought treatment from the VA for a possible right rotator cuff problem. (R. 382, 434.) He later complained of cervical pain. (R. 419). An MRI on June 24, 2002, showed hypertrophic uncovertebral joint degenerative change at C5-6 and C6-7 resulting in left sided neural foraminal narrowing and compromise of the exiting left C6 and C7 nerve roots. (R. 223-24.) On August 26, 2002, Plaintiff reported bilateral shoulder pain and stated he could swing an axe, but had pain lifting a milk jug. (R. 334, 410.)

On January 14, 2004, Plaintiff, Plaintiff reported that he "continues to improve," is "happy with "current management" and is exercising more. (R. 275.) On June 2, 2004, Plaintiff reported splitting firewood and working in the yard, and reported sharp and burning pain in his mid-cervical region after raking for four hours. (R. 257-59.) Plaintiff's gait was normal and during physical therapy he readily transferred and changed positions on the mat. Plaintiff reported that with the exercise as well as trigger point injections, he "feels remarkably better both physically and emotionally." (R. 261.) An October 7, 2004 radiology report noted "considerable arthritic changes" of the cervical spine and the impression was "[o]steoarthritis of the cervical spine." (R. 175.) On January 4, 2005, Plaintiff reported that pain was less with a decrease in the

frequency and intensity of radicular symptoms, and reported pain as a 3 on a scale of 10. (R. 210-11.) On March 22, 2005, Plaintiff had a painful lipoma removed from his right shoulder. (R. 663.) On March 31, 2005, Plaintiff reported his pain was a 3 on a scale of 1 to 10. (R. 635.) On April 22, 2005, Plaintiff had a cervical medial branch block. (R. 625-29.)

Plaintiff consistently reported that his medications and trigger point injections every 6 weeks were controlling his pain (R. 207, 209, 210, 230, 243, 251, 255, 256, 263, 272, 274, 287, 296, 301, 306, 309, 310, 312, 316, 317, 326, 349, 511, 521, 535, 541, 599, 604-05, 607, 615, 625, 631-32, 653, 713, 719, 798, 800-01, 809-10, 804-05); that trigger point injections "help him exercise more, make him more active and help him work" (R. 221, 244, 259); that he was tolerating his medications well (R. 207, 210 230, 243, 251, 255, 256, 263, 272, 287, 301, 310, 312, 317, 326, 511, 521, 535, 541, 599, 604-05, 607, 615, 625, 631-32, 653, 713, 719, 798, 804-05); and that he was exercising and stretching on a regular basis and that he was improving. (R. 209, 226, 247, 549, 602, 659.)

Plaintiff has a history of abusing marijuana, alcohol and prescription drugs. (R. 383, 570.) On occasion it was noted that Plaintiff was "taking more than prescribed"(R. 260), using hydrocodone more frequently than prescribed (R. 345) and taking more percocets than prescribed – up to nine per day. (R. 252, 260.) On October 20, 2005, Plaintiff tested positive for marijuana and started on a narcotic weaning schedule. (R. 570, 586-87.) A VA psychologist considered Plaintiff a "high risk for continued use." (R. 572.) Plaintiff was referred to a support group for veterans with a substance abuse problems. (R. 496.) After Plaintiff's medication was changed from percocet to

hydrocodone, he reported inadequate pain relief. (R. 809.) On April 12, 2006, Plaintiff complained that his lower back pain was not as well controlled when his medications were reduced. (R. 543.)

In June 2006, Plaintiff was diagnosed with prostate cancer and had a subsequent prostatectomy. (R. 692-93, 721-93, 812-17.) An MRI of the lumbar spine on August 15, 2006 revealed circumferential disc bulge at L4/5 without focal protrusions and disc desiccation involving L2/3 and L4/5. (R. 673-74.) On September 14, 2006, Plaintiff reported that the pain relief he obtains from his current pain relievers were enough "to make a real difference" in his life. (R. 800.)

On October 30, 2004, Gary Honickman, Ph.D., performed a consultative psychological examination. (R. 147-48.) Dr. Honickman's diagnostic impression was pain disorder associated with both psychological factors and a general medical condition (back injury.)

On November 9, 2004, Lawrence Field, D.O., performed a consultative physical examination of Plaintiff. (R. 149-51.) Plaintiff complained of neck pain that "comes and goes depending on position." Dr. Field reviewed an x-ray of Plaintiff's right shoulder which was within normal limits, an x-ray of the lumbar spine which was within normal limits, and an MRI of his cervical spine which revealed degenerative joint disease at C5 through C7 with left-sided neural foraminal narrowing at the C6-C7 nerve roots. Based on his review of the records and a physical examination of Plaintiff, Dr. Field concluded that mentally and physically "there are no impairments." (R. 150.)

Non-examining state agency expert, Nicholas Bancks, M.D. reviewed the records and concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds,

stand and/or walk for about 6 hours in an 8-hour workday, sit with normal breaks for about 6 hours in an 8-hour workday, and push and pull without limitation. (R. 152-59.) Bancks found that Plaintiff was limited to occasional overhead reaching but he found no postural, visual, communicative or environmental limitations.

Non-examining state agency expert, Donald Morford, M.D. reviewed the records and concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and push and/or pull without limitation. (R. 438-44.) Morford further found that Plaintiff should only occasionally climb and should avoid concentrated exposure to extreme cold, extreme heat and hazards. He found no postural, manipulative, visual or communicative limitations.

Non-examining state agency expert, Val J. Bee, Psy.D., reviewed the records and concluded that Plaintiff's somatoform and affective disorders were not severe and found only mild difficulties in maintaining concentration, persistence or pace. (R. 160-72.) Likewise, state agency expert, Michael H. Zelenka, Ph.D. reviewed the records and concluded that Plaintiff's affective disorders were not severe and resulted in no functional limitations. (R. 445-57.)

At the hearing, Plaintiff testified that he has constant burning pain that starts in his neck and moves into his shoulders, arms and hands. (R. 831-32.) In 1999, Plaintiff's pain was 7+ on a scale of 1 to 10 and at the time of the hearing he reported that on average his pain was 4 to 6. (R. 831.) Plaintiff testified that several times per week he has trouble focusing for about 10 to 15 minutes due to pain medications. (R. 832.) Plaintiff reported additional side effects from the pain medications, including

9

constipation, stomach cramps, dizziness, sweating, and disorientation. (R. 833-34.) Plaintiff reported migraines about five times per month. (R. 832.)

Plaintiff testified that in 1999 his most comfortable position was laying on his back but at the time of the hearing it was laying on his right side in the fetal position, which he does for approximately 12 to 14 hours per day. (R. 834.) Plaintiff testified that on a typical day he walks on the neighbor's dock, throws cracked corn in the water, takes a swim with his wife, eats breakfast, watches tv, reads, and falls asleep. (R. 836.) Plaintiff testified that on a regular basis he gets steroid injections in his cervical spine, shoulder blades and arms. (R. 837.) Plaintiff testified that in October 2001, he could sit for about two hours with breaks, stand for three hours a day with breaks, walk 100 yards, lift and carry up to 50 pounds, had trouble stooping and squatting but that since October 2003 his condition has worsened due to hip pain and he can only sit for an hour-and-a-half, stand for an hour-and-a-half, walk for fifty yards, and lift and carry up to 25 pounds. (R. 838-40, 842.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff suffered from a back disorder (discogenic and degenerative) and affective/mood disorders. (R. 21.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (Id.)

The ALJ then found that Plaintiff retained the RFC to perform medium work in regards to which he can lift 50 pounds occasionally, 25 pounds frequently; stand/walk/sit for 6 hours in an 8-hour day; with limitations in pushing/pulling and

10

Plaintiff should avoid concentrated exposure to extreme cold, heat, and working around hazards such as unprotected heights and moving machinery. (Id.) In reaching this conclusion, the ALJ found that Plaintiff's subjective allegations of pain and functional limitations of disabling severity were not totally credible (R.18-20. ) The ALJ then found that Plaintiff could not perform any of his past relevant work. Relying upon testimony by a vocational expert and the grids, the ALJ found that Plaintiff was not disabled because he could perform other jobs in the regional and national economy.

## IV. DISCUSSION

Plaintiff only raises one issue on appeal – i.e., that the ALJ failed to properly evaluate Plaintiff's credibility. For the following reasons, the Court finds that the ALJ's credibility analysis was adequate and supported by substantial record evidence.

In evaluating disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms, such as fatigue, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[22] The Eleventh Circuit has set forth a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms.[23] The "pain standard", which applies to complaints of subjective conditions other than pain, requires that the plaintiff first produce medical or other evidence of an underlying medical condition. Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged symptom arising

---

[22] 20 C.F.R. § 404.1528.

[23] Id. at 1560.

11

from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom.[24]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[25] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[26] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[27] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[28] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[29] As a matter of law, the failure to articulate the reasons for

---

[24] Id.

[25] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[26] Foote at 1562-1563.

[27] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[28] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[29] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

discrediting subjective pain testimony requires that the testimony be accepted as true.[30]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[31] assessment to Plaintiff's subjective complaints by noting the Plaintiff's complaints of a back disorder (discogenic and degenerative) and affective/mood disorder. (R. 21.) While the ALJ did not cite the exact language of the standard, he did state that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §404.1529 and Social Security Ruling 96-7p." (R. 18.) This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard. Moreover, the ALJ cited 20 C.F.R. §404.1529 which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[32]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions – back disorder and affective/mood disorder– that could be expected to give rise to pain and functional limitations. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding his level of pain and the degree of functional limitations were not fully credible.

The ALJ articulated several reasons to support his conclusion that Plaintiff's subjective complaints were not consistent with the evidence of record. Plaintiff argues

---

[30] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[31] Marbury, 957 F.2d at 839.

[32] See Wilson, 284 F.3d at 1226.

13

that the ALJ's articulated reasons were merely "random observations" from the record and they did not provide explicit or adequate reasons for rejecting Plaintiff's credibility. The Court disagrees.

First, the ALJ explained that Plaintiff's complaints of constant (24/7) and severe pain (9 on a scale of 1 to 10) were inconsistent with the medical records. Treatment notes from the VA medical center show that Plaintiff was receiving trigger point injections that were effective for the pain and allowed Plaintiff to exercise more, be more active, and helped him work. (R. 221, 244, 259.) Indeed, Plaintiff repeatedly reported that medications and trigger point injections were controlling his pain. (R. 207, 209, 210, 230, 243, 251, 255, 256, 263, 272, 274, 287, 296, 301, 306, 309, 310, 312, 316, 317, 326, 349, 511, 521, 535, 541, 599, 604-05, 607, 615, 625, 631-32, 653, 713, 719, 798, 800-01, 809-10, 804-05.) Moreover, pain rehabilitation notes show that Plaintiff was doing physical therapy and daily exercises with improvements in mood and pain. (R. 209, 226, 247, 602, 659.) On January 14, 2004, Plaintiff reported that he "continues to improve" is "happy with "current management" and is exercising more. (R. 275.) On June 2, 2004, Plaintiff reported that with the exercise as well as trigger point injections, he "feels remarkably better both physically and emotionally." (R. 261.) As recently as September 14, 2006, Plaintiff reported that the pain relief he obtains from his current pain relievers were enough "to make a real difference" in his life. (R. 800.)

Nevertheless, Plaintiff argues that the trigger point injections are actually proof of pain and that they were effective "only shows they were a wise medical choice." However, the regulations specifically provide that in evaluating Plaintiff's complaints of pain the Commissioner will consider "the type, dosage, effectiveness, and side effects

14

of any medication you take or have taken to alleviate your pain or other symptoms" as well any other treatment.[33] Here, Plaintiff consistently reported that trigger point injections, as well as pain medications and physical therapy were effective in controlling his pain. Plaintiff's ability to manage his pain through various treatments is inconsistent with his alleged disabling level of pain.[34]

The ALJ correctly also noted that Dr. Field – the only examining source of record who offered any opinion as to Plaintiff's work activity limitations – opined that Plaintiff had no physical limitations.[35] Indeed, there is no record evidence that any physician (treating or otherwise) limited Plaintiff's activities in any way.

The ALJ also noted that Plaintiff's activities of daily living were inconsistent with his complaints of disabling pain – i.e., exercising and stretching on a daily basis, walking on the neighbor's dock to feed fish, swimming with his wife and spending time with neighbors, church people, and his parents. Plaintiff argues that "feeding fish, reading, and watching T.V. have little or no relationship to pain." However, it is well-settled that the ALJ may consider household and social activities in evaluating claims of disabling pain.[36]

---

[33] 20 C.F.R. §404.1529(c)(3)(iv, v).

[34] See Moore v. Astrue, 572 F.3d 520 (8th Cir. 2009).

[35] In his consultative report, Dr. Field noted that x-rays of Plaintiff's right shoulder and lumbar spine were normal. Plaintiff argues that reference to the x-rays of Plaintiff's shoulder and lumbar spine were irrelevant because Plaintiff's spinal issues involve his neck, not his lower back, and Plaintiff has "fibnomyalsis", which cannot be detected by x-ray. However, even accepting Plaintiff's arguments as true, Dr. Field's conclusion was based in part upon his physical examination of Plaintiff. Moreover, as discussed above, the ALJ articulated numerous other reasons for discrediting Plaintiff's subjective complaints.

[36] See Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §404.1529(c)(3)(i).

Finally, Plaintiff testified that his pain medication causes constipation, stomach cramps, dizziness, sweating, disorientation and several times per week he has trouble focusing for periods of 10 to 15 minutes. However, the treatment notes show that Plaintiff consistently reported that he was tolerating medications well. Moreover, Plaintiff failed to identify (nor did the undersigned find) any treatment records in which Plaintiff ever reported side effects from his pain medications.

Thus, the ALJ explicitly articulated several legitimate reasons to discredit Plaintiff's subjective complaints and those reasons are supported by substantial record evidence.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 11, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
	All Counsel